UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JENNIFER DECARLO

       Plaintiff,

v.                                 **REPORT AND RECOMMENDATION**
                                                06-CV-0488 (LEK)

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## I. Introduction

Plaintiff Jennifer DeCarlo brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and was not decided in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated January 14, 2009.

1

on the pleadings be granted and Defendant's cross-motion for judgment on the pleadings be denied.[3]

## II.   Background

On April 25, 2003 and May 15, 2003, Plaintiff, then a 26 year-old former warehouse worker, filed applications for SSI and DIB respectively (R. at 34-36, 94, 113). Plaintiff claimed she had been disabled since December 20, 2002 due to a learning disability, asthma and depression (R. at 106).[4] Her applications were denied initially on September 4, 2003 (R. at 18-23). Plaintiff filed a timely request for a hearing on October 8, 2003 (R. at 25).

On January 19, 2005, Plaintiff and her attorney appeared before the ALJ (R. at 48-9, 192-215).The ALJ considered the case *de novo* and, on February 7, 2005, issued a decision finding Plaintiff was not disabled (R. at 58-64). Plaintiff requested Appeals Council review on February 10, 2005 (R. at 68-9). On May 25, 2005 the Appeals Council remanded the decision to the ALJ to reconsider Plaintiff's asthma and obesity (R. at 70-73). On November 17, 2005, Plaintiff and her attorney again appeared before the ALJ (R. at 75-79, 216-44). On December 21, 2005 the ALJ once again issued a decision finding Plaintiff not disabled (R. at 11-17). The ALJ's December 2005 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on April 6, 2006 (R. at 3-5). On April 19, 2006, Plaintiff filed the present action.

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

Based on the entire record, the Court recommends the case be remanded for a calculation of benefits because the ALJ failed to apply the proper legal standards and his decision is not supported by substantial evidence.

### III.   Discussion

**A. Legal Standard and Scope of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

## B. Analysis

### 1. The Commissioner's Decision

The ALJ followed the sequential analysis and concluded that Plaintiff was not

disabled within the meaning of the Act. At step one, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since the date she alleged as the onset of her disability (R. at 12). At step two, the ALJ found Plaintiff suffered from the following severe impairments: borderline intellectual functioning, asthma, obesity, ankle pain, depression and anxiety (R. at 13). However, the ALJ found that Plaintiff's impairments, singly or in combination, did not meet a listed impairment. Id. The ALJ concluded Plaintiff retained the residual functional capacity ("RFC") to "lift or carry a maximum of 10 pounds frequently or 20 pounds occasionally, stand or walk for a maximum of 2 hours total in an eight hour work day with a need to avoid concentrated respiratory irritants and a need for simple unskilled work" (R. at 15). Based on Plaintiff's RFC and the testimony of vocational expert ("VE") Julie Andrews, the ALJ concluded Plaintiff could perform her past work as a small products assembler as the job is generally performed. Id. Therefore the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Id.

### 2. The Plaintiff's Claims

Plaintiff alleges (a) Plaintiff was disabled by her mental retardation, pursuant to Listing 12.05(C); (b) Plaintiff also met Listing 12.05(D); (c) the ALJ violated the treating physician rule in denying benefits to Appellant; (d) the ALJ erred by failing to fully comply with the Remand Order of the Appeals Council in again denying benefits to Plaintiff; (e) the ALJ erred as a matter of fact and law in determining that Plaintiff could perform her past work as an assembler; (f) the ALJ erred in concluding the Appellant had the residual functional capacity to perform her past work; (g) the ALJ erred in

determining that Appellant was not disabled because she did not pursue therapy for her mental illness; (h) and the ALJ erred in rejecting the credibility of Appellant.

### a. The ALJ Erred in Evaluating Whether Plaintiff Met the Requirements of Listing 12.05(C)

Plaintiff argues that she met the requirements of Listing 12.05(C). Impairments listed in Appendix I of the regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity; therefore, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). Listing 12.05 states in pertinent part:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.[5]
> The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.
> . . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). Thus, to meet Listing 12.05(C) Plaintiff must show (1) below average intellectual function with adaptive functioning deficits manifested before age 22 and continuing during the claim period, (2) a valid IQ

---

[5] To meet Listing 12.05, a claimant must satisfy this introductory paragraph, sometimes called the diagnostic description or a capsule definition, in addition to the criteria in one of the subparagraphs. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A) ("If your impairment satisfied the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets [Listing 12.05].").

score of 60 through 70, and (3) an impairment, other than her low IQ, that imposes "an additional and significant work-related limitation of functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C).

In the case at bar, the Commissioner concedes that Plaintiff meets the second and third requirements—a valid IQ score and another impairment imposing a significant limitation. Defendant's Brief, p. 11. The Court agrees*.*

There is no question that Plaintiff's IQ score meets the Listing 12.05(C) requirement. On November 5, 2004 and at the request of the County disability agency, Dr. Richard F. Liotta, psychologist, tested Plaintiff's IQ using the Wechsler Adult Intelligence Scale-III ("WAIS-III") and evaluated her adaptive behavior (R. at 168-74). Plaintiff achieved a verbal score of 68, a performance score of 81, and a full-scale score of 72 (R. at 170). "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Commissioner] use[s] the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(c). Here, Plaintiff's lowest score is 68, which falls within the 60 to 70 range required.

Similarly, Plaintiff has a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C).[6] The ALJ found "[t]he medical evidence indicates that the claimant

---

[6] Some courts dispute the proper test for evaluating whether a claimant's impairment imposes "an additional and significant work-related limitation of function," but the Second Circuit has not ruled on this issue. Compare Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (adopting the severity test discussed below) with Flowers v. U.S. Dep't of Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990) (requiring claimant to be unable to perform his or her prior work to show the required additional and significant limitation). However, revisions to paragraph 12.00(A) have clarified the additional limitation requirement of Listing 12.05(C). Revised Medical Criteria for Evaluating Mental Disorders and Traumatic

has borderline intellectual functioning, asthma, obesity, ankle pain, depression, and anxiety disorder, impairments that are 'severe' within the meaning of the Regulations" (R. at 13). While "borderline intellectual functioning" refers to Plaintiff's low IQ and therefore does not qualify for the purposes of satisfying the impairment requirement of the regulation, substantial evidence supports the ALJ's conclusion that the remaining conditions are severe because they are more than *de minimis* and "significantly limit[][her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); see Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995) (warning that the severity test should do no more than "screen out *de minimis* claims"). The evidence of record indicates Plaintiff's obesity causes ankle pain and limits her ability to walk and stand (R. at 202-04, 230, 234-35). Evidence indicates that Plaintiff's depression and anxiety cause, *inter alia*, insomnia (R. at 127, 170, 176, 182), weight loss (R. at 229), anxiety attacks (R. at 177, 235), "mild to moderate problems dealing appropriately with the normal stressors of life" (R. at 132), and headaches (R. at 176, 188, 211, 233). Also, the State agency's consultative physician, Dr. Nader Wassef, concluded Plaintiff's asthma required her to "avoid exposure to smoke, dust and respiratory irritants" (R. at 137, 179). Moreover, as mentioned above, the Commissioner

---

Brain Injury, 65 Fed. Reg. 50,746-01, 50,772 (August 21, 2000) ("We always have intended the phrase to mean that the other impairment is a "severe" impairment, as defined in §§ 404.1520(c) and 416.920(c)."). The regulations now direct an ALJ to "assess the degree of functional limitation the additional impairment[] imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a "severe" impairment[], as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A). Thus, the regulations indicate that the proper test for evaluating an impairment, other than low IQ, under Listing 12.05(C) is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." See 20 C.F.R. §§ 404.1520(c), 416.920(c); accord Baneky v. Apfel, 997 F. Supp. 543, 546 (S.D.N.Y. 1998) ("This Court holds that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under section 12.05(c) is the severity test . . .").

has not disputed that Plaintiff has an additional impairment which meets the requirements of Listing 12.05(C).

However, the Commissioner argues that Plaintiff does not meet the diagnostic description—below average intellectual function with adaptive functioning deficits, which evidence demonstrates existed before age 22. Specifically, the Commissioner argues Plaintiff fails to meet the requirement because "no doctor diagnosed plaintiff with mental retardation," presumably at any time, either before age 22 or after. Defendant's Brief, p. 11. The ALJ apparently agreed, reasoning as follows:

> Although the claimant has an IQ score of 68, she does not have a diagnosis of mental retardation and does not have a history consistent with mental retardation manifesting [sic] during the developmental period prior to age 21. I will accept that the claimant has intellectual limitations but these do not satisfy the criteria of listing 12.05.

(R. at 13).

Requiring Plaintiff to have a formal diagnosis of mental retardation to meet Listing 12.05(C) is an improper interpretation of the legal standard. "The plain language of the Listing does not so state, and the Commissioner cites no supporting authority." Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006) (finding Listing 12.05 does not require a diagnosis of mental retardation); accord, Devoe v. Barnhart, No. 3:05-CV-746, 2006 WL 1272614, at *5 (D. Conn. Mar. 15, 2006) (same). By requiring Plaintiff to have a formal diagnosis of mental retardation, the ALJ has applied an improper legal standard, which necessitates remand. See Rosa, 168 F.3d at 82-83.

The Commissioner argues that Plaintiff was never diagnosed with mental retardation and he points to medical evaluations and opinions that indicate Plaintiff has borderline intellectual functioning rather than mental retardation. Defendant's Brief, p.

9

11. The Court notes that Dr. Liotta opined that Plaintiff appeared to be functioning in the borderline range (R. at 171). Similarly, Dr. Brett T. Hartman, State agency consultative psychologist, opined that Plaintiff appeared to be functioning in the borderline range (R. at 131-33). However, because Listing 12.05 requires evidence of "deficits in adaptive functioning," the Court has focused on the doctors' particular findings regarding Plaintiff's deficits in adaptive functioning rather than a diagnosis. Moreover, the Court finds that the evidence of record supports the doctors' observations of Plaintiff's qualifying deficits in adaptive functioning.

      For example, the evidence of record indicates that Plaintiff attended special education classes throughout her schooling (R. at 197); attempted cosmetology classes, but failed because they were too difficult (R. at 219); graduated high school, but only with an IEP (individual education plan) (R. at 169, 197); has substantial difficulties with arithmetic, such that she is unable to pay her bills, handle money or count change (R. at 169, 172, 202, 212-13); has difficulty with reading comprehension, such that she cannot read a cookbook or understand newspaper articles (R. at 202, 233-34); has memory deficits, such that she must be reminded of daily tasks and cannot recall her own height and weight or her babies' heights and weights (R. at 172, 199, 210, 213, 220-21, 229, 236); and generally relies on her mother to go shopping, drive places, and help care for her children (R. at 129, 202, 212-15, 225-26). In a mental status examination, Dr. Hartman noted Plaintiff "had profound difficulty doing . . . calculations" and would not be able to manage money (R. at 131, 133). Based upon testing, consultative psychologist, Dr. Liotta noted Plaintiff had "quite low adaptive skills overall" (R. at 172). Specifically, she tested in the 1st percentile in functional academics,

the 2nd percentile in her ability to handle leisure time, and the 9th percentile in communication, community use, self-care, and social skills (R. at 171-72).

Furthermore, the ALJ's requirement that Plaintiff have a "history" of mental retardation in her development period, is ambiguous and misstates the Commissioner's regulations. The ALJ's focus on Plaintiff's lack of "history" could be read to imply he required Plaintiff to produce evidence of her deficits, in the form of declarations or medical diagnoses, from the developmental period. Such a requirement is also a misapprehension of the legal standard. A Federal Register notice from 2000 clarifies that the Commissioner does "not necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period. The final rules permit [the Commissioner] to use judgment, based on current evidence, to infer when the impairment began." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746-01, 50,753 (August 21, 2000).

Courts have found circumstantial evidence, such as the following, sufficient to infer deficits in adaptive functioning prior to age 22: evidence a claimant attended special education classes; dropped out of school before graduation; or had difficulties in reading, writing, or math. Christner v. Astrue, 498 F.3d 790,793 (8th Cir. 2007); Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006); Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y. 1999); Devoe, 2006 WL 1272614, at *6; Prentice v. Apfel, No. 96-CV-851, 1998 WL 166849, *4 (W.D.N.Y. Apr. 8, 1998); but see Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) (citing Diagnostic and Statistical Manual of Mental Disorders 42 (4th ed. 2000)) (concluding that the plaintiff had adaptive functioning

where she lived on her own, took care of at least three children without help and without having them removed from her custody, paid her bills, and avoided eviction); see generally West v. Comm'r of Soc. Sec. Admin., 240 Fed. Appx. 692, 698 (6th Cir. 2007) (unpublished decision) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills.").

After a careful review of the record, the Court concludes that Plaintiff manifested qualifying intellectual and adaptive functioning deficits before age 22, and continues to do so. As discussed above, the evidence shows that Plaintiff had deficits in intellectual and adaptive functioning manifested by, *inter alia*, her long history of special education, problems with reading comprehension and verbal skills, and profound difficulties with mathematics and money (R. at 169, 172, 197, 202, 212-13, 233-34). Plaintiff's work history further supports the Court's conclusion as it consisted of various short stints of work each lasting no longer than three to six months (R. at 192-244). At best, Plaintiff's work history indicates that she can obtain work but that she cannot function in a work environment on a sustained basis. Perhaps most importantly, Dr. Liotta's findings of Plaintiff's functioning clearly support the conclusion that Plaintiff meets the diagnostic description for Listing 12.05 (R. at 168-74). As stated above, the Court has focused on Dr. Liotta's findings as to Plaintiff's functioning, and not his diagnoses. In that regard, Dr. Liotta unequivocally found:

> [Plaintiff] has some longstanding deficits. Her intellectual functioning is quite low. She also has specific learning deficits and functional capacity deficits in her functional academics, specifically mathematics. Other problems may also be present. It appears she is functioning just a bit above what would be needed to make a mild mental retardation diagnosis, though in some realms she is clearly at this level, in other areas she is a bit above this level. . . . This is unlikely to change

> substantially in the future. . . . Overall likelihood of significant improvement in her functional capacity appears poor to fair. She is not capable of managing her funds in her own behalf and should be assigned a payee if she is found eligible for benefits. Her mother has helped her with her finances and assists her with various activities of daily living which are difficult for her.

(R. at 173-74). Dr. Liotta also found that Plaintiff's general adaptive functioning was in the 2.3 percentile (R. at 171). He endorsed the following problems in social functioning as consistent with his evaluation of Plaintiff: she has a hard time doing things quickly; she learns very slowly; she often needs reminders because she forgets things; she frequently asks questions and this causes others to become frustrated (R. at 172).

A careful review of this and other evidence in the record leads the Court to the only possible conclusion: that Plaintiff meets the diagnostic description of Listing 12.05. As the Commissioner agrees that Plaintiff meets the two prongs of Listing 12.05(C), this Court also concludes that Plaintiff meets all the requirements of Listing 12.05(C) and is entitled to benefits.

Because the Court agrees that Plaintiff meets Listing 12.05(C) as the third step of the sequential process, the Court will not discuss Plaintiff's remaining arguments. Nonetheless, the Court notes that the ALJ's decision was further flawed by failures to properly apply the treating physician rule and the credibility standard.

### b. The Decision Should Be Remanded for a Calculation of Benefits Because Plaintiff Meets Listing 12.05(C)

Under the Act, a court "shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (fourth sentence). "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard," the

Second Circuit has indicated that remand "for further development of the evidence " is proper. Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted). "In other situations, where [the] Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the Court has] opted simply to remand for a calculation of benefits." Id. at 83. Thus, the Second Circuit has reversed and "ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Where a fully developed record provides persuasive proof that a plaintiff meets a listed impairment, courts have remanded for a calculation of benefits. See, e.g., Muntz .v. Astrue, 540 F.Supp.2d 411, 421 (W.D.N.Y. 2008) (remanding for benefits where the evidence showed the Plaintiff met Listing 1.04(A) for a spinal disorder); see also Pimentel v. Barnhart, 2006 WL 2013015, at *14 (S.D.N.Y. July 19, 2006) (remanding for benefits where evidence established that the Plaintiff met Listing 112.05(F) for mental retardation).

      The Court recommends that this case be remanded for a calculation of benefits. The record before the ALJ and before this Court is complete. There is no apparent basis to conclude that further evidence might support the Commissioner's decision. To the contrary, the evidence decisively supports the conclusion that Plaintiff meets Listing 12.05(C). In light of the evidence as discussed above, the Court recommends remand for benefits alone.

## Conclusion

      Based on the foregoing, the Court recommends that Plaintiff's motion for judgment on the pleadings should be GRANTED and Defendant's motion for judgment

on the pleadings should be DENIED and the case be remanded to the Commissioner for a calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

>DATED: May 28, 2009
>Syracuse, New York

### Order

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

DATED: May 28, 2009
Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge